# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **Mary K. Curtis, A/K/A Katie Curtis**<br>93 S. Tamarack Rd.,<br>Akron, OH 44319<br><br>   Plaintiff,<br><br>  -vs.-<br><br>**Summit County Children Services**<br>c/o Cassandra Holtzmann<br>264 S. Arlington St.,<br>Akron, OH 44306<br><br>and<br><br>**County of Summit, Ohio**<br>c/o Ilene Shapiro<br>Ohio Building - 8th Floor<br>175 South Main Street<br>Akron, OH 44308<br><br>   Defendants. | **CASE NO.:  5:22-cv-2028**<br><br><br>**JUDGE:**<br><br><br>**COMPLAINT FOR RELIGIOUS DISCRIMINATION UNDER 42 U.S.C. § 2000e, *et seq*.**<br><br><br>**JURY DEMAND ENDORSED HEREON** |

For her Complaint against Defendants, Plaintiff Mary K. Curtis, A/K/A Katie Curtis, states:

## INTRODUCTION

1. This suit seeks to remedy Defendants' statutory violations and discrimination against Plaintiff who requested a religious accommodation from Defendants' mandate that she wear a mask while working.

2. Defendants violated Title VII by failing to provide required religious accommodations and by failing to engage in a meaningful interactive process to determine and provide reasonable accommodations.

3.   Rather than comply with its obligations under Title VII, Defendants threatened to terminate Plaintiff if she did not wear a mask while working on her assigned shifts and terminated Plaintiff for failure to do so.

4.   Defendants' statutory violations, discrimination, and retaliation left Plaintiff with the choice of wearing a mask in violation of her sincerely held religious beliefs or losing her job.

## JURISDICTION AND VENUE

5.   This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343, and 42 U.S.C. § 2000e-5(f)(3).

6.   Venue is proper under 28 U.S.C. § 1391(b) because the events complained of occurred in this District and Division.

## PARTIES

7.   Plaintiff Mary K. Curtis A/K/A Katie Curtis lives in Akron, Ohio and worked as a Social Worker Assistant (SWA)/Social Service Aide (SSA) in the Community Visit Unit at Summit County Children Services, a Summit County agency working with abused and neglected children and their families. As an SWA/SSA, Plaintiff supervised community court ordered visitations within their homes or community or at the Summit County Children Services building.

8.   Defendant Summit County Children Services (SCCS) is the County of Summit's local child welfare agency mandated to assess and investigate reports involving the safety and well-being of children. SCCS is headquartered in Akron, Ohio.

9.   Defendant County of Summit, Ohio is the official managerial and legal body of Summit County, Ohio. With a charter form of government, it manages over ten (10) departments in addition to overseeing various agencies and divisions, including SCCS. It is one of the largest employers in the county and is headquartered in Akron, Ohio.

2

## FACTUAL ALLEGATIONS

10. Plaintiff worked at SCCS for more than 14 years with a hiring date in September of 2007.

11. Plaintiff holds a license as a professional counselor in Ohio.

12. During her employment at SCCS, Plaintiff did not work in any capacity that used her professional counseling license.

13. SCCS was Plaintiff's direct employer and an agency/division of Defendant County of Summit, Ohio (CSO).

14. Defendant CSO maintains oversight authority and job postings on its website for all open positions at SCCS.

15. Upon information and belief, Plaintiff was the only employee at SCCS who requested a religious exemption from the mask mandate until the date of her termination.

### A.  Masking Mandates

16. In response to increasing rates of COVID-19 infection, the Ohio Department of Health ("ODH") issued a *Director's Order* on July 8, 2020, requiring the wearing of facial coverings ("masks") in certain named counties. Covered businesses in the named counties included all for-profit, non-profit, educational entities, or governmental entities (other than federal) regardless of the type of service or function. Individuals in the named counties (Butler, Cuyahoga, Franklin, Hamilton, Huron and Trumbull) included mask requirements in any non-residential location and in certain outdoor and transportation situations.[1]

---

[1] https://coronavirus.ohio.gov/static/publicorders/Directors-Order-Facial-Coverings.pdf

17. On July 10, 2020, the ODH extended this mask mandate to Summit County and to a few other named counties in the *Addendum to Director's Order*.[2] The ODH later lifted its mask mandate via a *Director's Order* issued on June 1, 2021, effective as of June 2, 2021.[3]

18. On July 23, 2020, Governor Mike DeWine made the mask mandate state-wide and issued a travel warning.[4] He later rescinded this mandate on June 2, 2021 everywhere except at nursing homes and other assisted living facilities.[5]

19. SCCS instituted its own COVID-19 response on July 27, 2020, requiring all SCCS staff to wear a face covering while conducting SCCS business or on SCCS premises.[6] It did not provide for any medical or religious exemption to the mask mandate and provided no instructions as to how employees could request an exemption as required under EEOC guidelines. See *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* §§ K.1& K.2., EEOC (Updated July 12, 2022).[7]

20. On August 3, 2020, SCCS followed up with the *COVID-19 Response Plan Family Interaction & Child Transportation Guidelines* specifically requiring staff to wear face coverings at all times during their participation in family interactions and while transporting children. No instructions for requesting religious or medical exemptions were provided. [8]

21. On August 28, 2020, Summit County health officials issued their own mask mandate requiring the wearing of masks or face coverings in most public places and requiring businesses

---

[2] https://coronavirus.ohio.gov/static/publicorders/Addendum-Facial-Coverings.pdf
[3] https://coronavirus.ohio.gov/static/publicorders/directors-order-rescinding-various-orders-06-02-21.pdf
[4] https://governor.ohio.gov/media/news-and-media/covid19-update-07222020
[5] https://www.thelantern.com/2021/05/dewine-announces-lift-of-mask-mandate-and-other-health-orders-starting-june-2/
[6] See Summit County Children Services 2020 COVID-19 (CORONAVIRUS) PLAN Risk Assessment Guidelines, *Contact with Children and Families Guidelines for Assessing Risk of COVID-19 (Effective July 27, 2020).*
[7] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws
[8] https://www.summitkids.org/Portals/0/COVID19/COVID19VisitationResponsePlan08092021.pdf

to enforce it on their employees and customers. An exception was provided when the wearing of a mask "substantially burdens the practice of a sincerely held religious belief." See *Summit County Board of Health Passes Mandatory Masking Order,* Press Release Summit County Public Health (Released August 28, 2020)[9]; and *Summit County Board of Health passes mask mandate; businesses could face $100 fine* (Published August 28, 2020).[10]

22. Later when the Governor rescinded his mask mandate on June 20, 2021, Summit County temporarily lifted their mask mandate but, upon information and belief, then reinstituted it when COVID-19 cases rose beyond a certain level.

23. On August 9, 2021, after a period of no masking for several months, staff were instructed to return to mask wearing. See *Summit County Children Services Covid-19 Response Plan, Family Interaction & Child Transportation Guidelines* (Revised August 9, 2021).[11]

24. Contrary to EEOC guidance, Defendants' mask mandate was effectually absolute as to employees seeking religious exemption. No reasonable accommodation (such as periodic testing or social distancing) that did not involve at least limited mask wearing and/or a reduction in pay was offered despite the depth and sincerity of the requestor's religious belief.

**B.  Federal Law Prohibiting Religious Discrimination and Retaliation**

25. Title VII prohibits Defendants from discriminating against employees based on religion. This "include[s] all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee's […] religious

---

[9]

https://www.scph.org/sites/default/files/editor/Coronavirus/BOH%20masking%20mask%20resolution%20passgae.pdf

[10] https:// www.cleveland.com/coronavirus/2020/08/summit-county-board-of-health-passes-mask-mandate-businesses-could-face-100-fine.html#:~:text=AKRON%2C%20Ohio%20–%20The%20Summit%20County%20Board%20of,the%20mask%20mandate%20among%20their%20employees%20and%20customers.

[11] https://www.summitkids.org/Portals/0/COVID19/COVID19VisitationResponsePlan08092021.pdf

observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j).

26. Title VII of the Civil Rights Act of 1964 ("Title VII") requires employers to offer reasonable accommodation to a requested religious exemption absent demonstration of undue hardship on their business. Failure to do so is an unlawful employment practice. 29 C.F.R. § 1605.2 (b)(1).[12]

27. U.S. Equal Employment Opportunity Commission (EEOC) guidance on Title VII and the COVID-19 pandemic provides that employers should "thoroughly consider all possible reasonable accommodation." Some examples of reasonable accommodation include social distancing, offering telework, and periodic testing. See *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws* §§ K.2, K.12., EEOC (Updated July 12, 2022).[13]

28. According to EEOC guidance, one of the relevant factors in determining reasonable accommodation includes the number of employees seeking the exemption. *Id.* at § L.3. [14]

29. Title VII also prohibits SCCS from retaliating against employees for engaging in protected activity. See *Laster v. City of Kalamazoo*, 746 F.3d 714, 729 (6th Cir. 2014).

**C. Defendants' Accommodation Request System**

30. SCCS provided no method or system by which employees could request accommodation to its mask mandate.

---

[12] https://www.ecfr.gov/ current/title-29/subtitle-B/chapter-XIV/part-1605/section-1605.2#1605.2-footnote-2

[13] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

[14] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws]

31. In addition, SCCS provided no instruction as to how an employee might request for religious or medical exemption on their own initiative. Employees seeking exemption from the mask mandate had to figure it out on their own with no direction or assistance from SCCS.

32. Although SCCS did not prohibit employees from applying for a religious exemption to the masking mandate, Plaintiff's request for religious exemption to the masking mandate was disregarded and processed in a discriminatory way.

### D. Plaintiff's Accommodation Requests and Defendants' Responses

33. Plaintiff submitted her religious accommodation request from the SCCS mask mandate on September 14, 2021 in a notarized letter addressed to Summit County Children Services.

34. In her request, Plaintiff stated that her sincerely held religious beliefs prevented her from wearing a mask or any form of facial covering. Plaintiff was open about her Christian faith throughout her employment and was widely known by her fellow employees at SCCS as a strong follower of the Christian faith.

35. Following submission of her religious accommodation request, Plaintiff was sent home and forced to take Paid Time Off ("PTO") until her request was resolved.

36. On September 15, 2021, SCCS Deputy Executive Director, Human Resources & Support Services Valerie Nash ("NASH") called for a hearing to discuss Plaintiff's request for an exemption. In this hearing, Plaintiff spoke of her deeply held religious convictions as a Christian and provided supporting scriptures that she is to trust in the Lord with all her heart and that without faith it is impossible to please God. Wearing a mask evidences a lack of faith and trust in God to protect her. When SCCS asked if there were any options, Plaintiff offered to complete periodic COVID-19 testing instead of wearing a mask as a reasonable accommodation.

37. SCCS ignored Plaintiff's offer to complete periodic testing and instead offered Plaintiff a lower paid position that still required wearing a mask/face shield.  SCCS did not seek interactive discussions with Plaintiff on her accommodation request but instead threatened Plaintiff that she would have to wear a mask or resign. Plaintiff was again instructed that she would have to use her PTO until this was resolved.

38. On September 20, 2021, NASH emailed Plaintiff that her exemption request had been denied. NASH stated that Plaintiff's beliefs are not a sincerely held religious belief protected under law. NASH further stated that even if Plaintiff's beliefs were sincere, SCCS would still deny religious accommodation because of undue hardship due to the "threat" of spreading COVID by not wearing a mask. NASH did not specify or discuss any claimed deficiency presented by Plaintiff's offer to test periodically. NASH ordered Plaintiff to return to work the next day on September 21, 2021 wearing a mask or SCCS would consider her to have resigned.

39. On September 20, 2021, Plaintiff responded via email stating that she would not wear a facial covering/mask due to her sincerely held religious beliefs and would not accept a voluntary resignation under any circumstances.

40. On September 22, 2021, NASH emailed Plaintiff stating that due to her refusal to return to work as directed, i.e., wearing a mask, a meeting will be held with her on October 13, 2021.

41. On October 13, 2021, SCCS held a disciplinary meeting with Plaintiff. During this meeting, NASH asked Plaintiff about her professional licensing as a counselor even though Plaintiff never worked in that capacity for SCCS. NASH then cited counseling ethics to Plaintiff, causing Plaintiff concern that NASH was threatening her professional counseling license due to her religious beliefs.  NASH then instructed Plaintiff to read the COVID-19 protocol line by line, demanding Plaintiff identify how each and every policy went against her religious beliefs. The covered

policies were not limited to the mask mandate (the subject of her religious accommodation request) but covered all COVID-19 protocols and took Plaintiff about one hour to complete. The process was grueling, and Plaintiff felt threatened and demeaned for her faith.

42. On October 22, 2021, SCCS met with Plaintiff to communicate the disposition of the charges against her.

43. On November 1, 2021, Plaintiff was terminated.

**E.  EEOC filing and Plaintiff's right to sue**

44. Plaintiff timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") raising the issues in this Complaint.

45. The EEOC issued Plaintiff a Notice of Right to Sue on August 11, 2022.

**COUNT I**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq.***
**Religious Discrimination-Failure to Accommodate**

46. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

47. Plaintiff holds sincere religious beliefs that preclude her from wearing a mask or any facial covering.

48. Plaintiff informed SCCS of those beliefs and requested accommodation from the masking mandate.

49. SCCS denied Plaintiff's request for religious accommodation on masking.

50. Although Plaintiff stated her willingness to follow alternative measures such as periodic COVID-19 testing, SCCS did not engage in an interactive process with Plaintiff regarding her request for religious accommodation. Defendants responded to Plaintiff's attempts at resolution with a blanket denial and ignored mitigating factors such as the limited number of individuals requesting exemption from the mask mandate.

51. Defendants did not provide Plaintiff with reasonable accommodations for her religious beliefs.

52. Defendants discriminated against Plaintiff because of her religious beliefs.

53. Defendants' failure to provide religious accommodation has harmed and will continue to harm Plaintiff.

54. By failing to engage in the interactive process or offer any reasonable accommodation, Defendants' discriminatory actions were intentional and/or reckless and in violation of Title VII.

**COUNT II**
**Violation of Title VII, 42 U.S.C. § 2000e, *et seq.***
**Religious Discrimination-Retaliation**

55. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

56. Plaintiff engaged in protected activity when she requested religious accommodations from SCCS's masking mandate and when she complained to management about the discriminatory behavior of SCCS staff in response to her religious objections to the masking mandate.

57. Defendants responded to Plaintiff's protected activity by giving Plaintiff the false choice between masking and effective termination.

58. Plaintiff's religious beliefs and protected activity were the causes of Defendants' adverse employment action. Defendants did not engage in an interactive process with Plaintiff because Defendants never intended to provide Plaintiff with accommodation to the mask mandate even if it conflicted with Plaintiff's sincerely held religious beliefs.

59. Defendants' discriminatory and disparate treatment of Plaintiff's religious accommodation request for exemption from masking confirms Defendants' hostility to requests for religious accommodation.

60. Defendants retaliated against Plaintiff's protected activity by terminating Plaintiff's employment.

61. By retaliating against Plaintiff for engaging in protected activity, Defendants violated Title VII. This violation harmed and continues to harm Plaintiff.

**COUNT III**
**Violation of the Religious Freedom Restoration Act**
**(42 U.S.C. §2000BB-1)**

62. Plaintiff restates the foregoing paragraphs as if set forth fully herein.

63. The Religious Freedom Restoration Act, 42 U.S.C. § 2000BB-1, et seq., prohibits the government from substantially burdening a person's free exercise of religion even if it results from a rule of general applicability, unless the rule is to further a compelling governmental interest and is the least restrictive means of furthering that interest.

64. Defendants are government actors. Their actions as set forth herein were all undertaken under policies, practices, customs, and procedures created, adopted, and enforced under color of law.

65. Defendants' actions in denying Plaintiff meaningful interactive dialog to discuss means for accommodating her.  Defendants' refusal to accommodate along with termination imposed a substantial burden on Plaintiff's exercise of religion.

66. Even if Defendants' mask mandate and implementation were a rule of general applicability, which it is not, and even if it were to further a compelling governmental interest, they have not been applied in the least restrictive means.

67. Defendants' actions caused irreparable harm and actual hardship to Plaintiff by violating her sincerely held religious beliefs and the occupational, professional, social and economic consequences pled above.

11

68. Plaintiff has no adequate remedy at law to prevent the continuing violation of their constitutional liberties and sincerely held religious beliefs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court award her:

a.  Damages including back pay, reinstatement or front pay, pre-judgment and post-judgment interest, punitive damages, and compensatory damages.

b.  Injunctive relief.

c.  Reasonable attorneys' fees and costs.

d.  Any other relief that the Court considers just, proper, and equitable.

Respectfully submitted,

**MENDENHALL LAW GROUP**

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (096884)
190 North Union St., Suite 201
Akron, OH 44304
330.535.9160; f 330.762.9743
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff*

## JURY DEMAND

A trial by jury is demanded for all issues so triable.

Respectfully Submitted,

/s/ Warner Mendenhall
Warner Mendenhall (0070165)

12